**RURAL TELEPHONE SERVICE COMPANY, INC., Plaintiff–Appellant,**

v.

**FEIST PUBLICATIONS, INC., Defendant–Counter–Claimant–Appellee.**

No. 90–3254.

United States Court of Appeals, Tenth Circuit.

Feb. 19, 1992.

See also 663 F.Supp. 214.

Mark E. Weber, Gibson, Dunn & Crutcher, Los Angeles, Cal. (James M. Caplinger, Jr., Topeka, Kan., on the brief), for plaintiff-appellant.

Kyler Knobbe, Ridenour & Knobbe, Cimarron, Kan., for defendant-counter-claimant-appellee.

Before MOORE and SETH, Circuit Judges, and BRATTON,* District Judge.

JOHN P. MOORE, Circuit Judge.

This is an appeal from an order of the district court finding defendant Rural Telephone Service Company's refusal to deal with plaintiff Feist Publications, Inc., violated § 2 of the Sherman Act, 15 U.S.C. § 2. *Rural Tel. Serv. Co. v. Feist Publications, Inc.*, 737 F.Supp. 610 (D.Kan.1990). The district court found Rural Telephone possessed monopoly power in the yellow pages advertising market and Rural Telephone's decision not to license its white pages listings to Feist Publications was an act designed to maintain its monopoly position. Based on this finding, the district court awarded treble damages in the amount of $99,000 for the years 1978–1987 to Feist Publications and enjoined Rural Telephone from refusing to license its white pages listings to Feist Publications at a reasonable rate. It further awarded Feist Publications reasonable attorney fees. Rural Telephone assigns several errors to the district court's findings, including an under-inclusive definition of the relevant market, an erroneous finding of monopoly power, and a deficient determination of injury and damages. We need not deal with those issues because we conclude Feist Publications failed to prove Rural Telephone's refusal to deal was anti-competitive in effect. Therefore, we reverse the judgment of the district court.

I.

Rural Telephone is a nonprofit, cooperative telephone company granted monopolist status by the State of Kansas to provide telephone service to subscribers in designated areas of northwest Kansas. All of the telephone subscribers in the Rural Tele-phone service area are member owners. Under Rural Telephone's charter, all revenues exceeding its cost of doing business are returned to its members under a refund plan.

As required by the Kansas Corporation Commission, Rural Telephone publishes and distributes an annual telephone directory. In addition to its white pages listings, Rural Telephone's directory also contains yellow pages advertising.

Feist Publications is a private Kansas corporation that distributes a competing telephone directory in northwest Kansas. The directory includes communities outside of Rural Telephone's service area, and Feist Publications competes with Rural Telephone for yellow pages advertising. In compiling its area-wide directory, Feist Publications approached the eleven telephone companies covering northwest Kansas and offered to purchase their white pages listing information.

In 1978, Feist Publications asked to purchase Rural Telephone's copyrighted[1] listings at a price of ten cents per listing. Rural Telephone declined the offer, but Feist Publications copied the listings nonetheless and incorporated them in its own directory. When Rural Telephone sued Feist Publications for violation of its copyright, Feist Publications counterclaimed with a Sherman Act violation. That counterclaim forms the basis for this case.

II.

■ Illegal monopolization under § 2 of the Sherman Act has two distinct elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966); *Aspen Highlands Ski-*

---

* Honorable Howard C. Bratton, United States Senior District Judge for the District of New Mexico, sitting by designation.

1. In *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, —— U.S. ——, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991), the Supreme Court held Rural's copyright did not extend to the information contained in its white pages listings.

ing Corp. v. Aspen Skiing Co. (*Aspen Highlands*), 738 F.2d 1509, 1519 n. 12 (10th Cir.1984), *aff'd*, 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985) (*Aspen Skiing*); *Bright v. Moss Ambulance Serv., Inc.*, 824 F.2d 819, 823 (10th Cir.1987); *Reazin v. Blue Cross & Blue Shield of Kan., Inc.*, 899 F.2d 951, 973 (10th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 3241, 111 L.Ed.2d 752 (1990).[2] Additionally, plaintiff must show causal antitrust injury.[3]

■ A refusal to deal may be one of the mechanisms by which a monopolist maintains its power. In determining whether a monopolist which has refused to deal with a competitor has acted lawfully or in violation of § 2, we apply a two-part test. First, we look at the effects of the monopolist's conduct. Second, we look at its motivation. *Aspen Highlands*, 738 F.2d at 1519.[4] Because we conclude Feist Publications failed to prove Rural Telephone's refusal to deal had anti-competitive effects, we do not reach the second stage of analysis.

■ When examining the effects of Rural Telephone's conduct, we must determine whether its refusal to deal is likely to enable it to foreclose competition, to gain a

competitive advantage, or to destroy competition. *See United States v. Griffith*, 334 U.S. 100, 107, 68 S.Ct. 941, 945, 92 L.Ed. 1236 (1948); *Westman Comm'n Co. v. Hobart Int'l, Inc.*, 796 F.2d 1216, 1220 (10th Cir.1986), *cert. denied*, 486 U.S. 1005, 108 S.Ct. 1728, 100 L.Ed.2d 192 (1988).[5] Feist Publications must demonstrate Rural Telephone's conduct was intended to or did have some anti-competitive effect beyond its own loss of business. *California Computer Prods., Inc. v. IBM*, 613 F.2d 727, 732 (9th Cir.1979). *Accord Colorado Interstate Gas Co. v. Natural Gas Pipeline Co. of Am.*, 885 F.2d 683, 697 (10th Cir. 1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 441, 112 L.Ed.2d 424 (1990); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 894 (10th Cir.1991).[6] Additionally, Feist Publications must show the injury inflicted is the type the Sherman Act was intended to forestall. *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 488–89, 97 S.Ct. 690, 697–98, 50 L.Ed.2d 701 (1977).

■ Feist Publications alleges Rural Telephone's refusal to license its white pages listings caused Feist Publications' white pages listings to be incomplete, which in turn caused Feist Publications' yellow pages advertising revenues to de-

---

**2.** In this circuit, monopoly power is defined as the ability to control prices and exclude competition. *Shoppin' Bag of Pueblo, Inc. v. Dillon Companies, Inc.*, 783 F.2d 159, 164 (10th Cir. 1986). In defining the relevant market, two aspects must be considered: the product market and the geographic market. *See Cackling Acres, Inc. v. Olson Farms, Inc.*, 541 F.2d 242, 246 (10th Cir.1976) (geographic area), *cert. denied*, 429 U.S. 1122, 97 S.Ct. 1158, 51 L.Ed.2d 572 (1977), and *Telex Corp. v. IBM*, 510 F.2d 894, 914 (10th Cir.) (product area), *cert. dismissed*, 423 U.S. 802, 96 S.Ct. 8, 46 L.Ed.2d 244 (1975). For the purposes of this opinion, we assume the possession of monopoly power in the relevant market.

**3.** "Of course, the fact of injury and damages suffered by reason of a violation of the antitrust laws must also be shown for a private litigant to recover on a claim of monopolization." *Aspen Highlands*, 738 F.2d at 1519 n. 12; *Reazin*, 899 F.2d at 973.

**4.** In *Aspen Highlands*, the court focused on the motivation and competitive effect of the refusal to deal. 738 F.2d at 1519. If the challenged activity is likely to have an anti-competitive ef-

fect, we must then examine whether the refusal to deal is fairly characterized as "exclusionary" or "anti-competitive." *Aspen Skiing*, 472 U.S. at 602, 105 S.Ct. at 2857. It is at this stage we consider the monopolist's asserted business justification. *Id.* at 608–11, 105 S.Ct. at 2860–62.

**5.** "We adhere to the view that the antitrust laws should not restrict the autonomy of independent businessmen when their activities have no adverse impact on the price, quality, and quantity of goods and services offered to the consumer. Thus, we consider Hobart's refusal to deal in light of its effect on consumers, not on competitors." *Westman v. Hobart*, 796 F.2d at 1220 (citation omitted).

**6.** It is important to remember "the antitrust laws, however, were enacted for the protection of competition, not competitors," and courts must always be mindful lest these laws be invoked perversely in favor of those who seek protection against the rigors of competition. *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977).

cline. However, the district court did not make a specific finding of harm to competition.[7]

■ In reaching its conclusions, the district court focused considerably on Rural Telephone's alleged anti-competitive intent. Assuming Rural Telephone's refusal to deal was motivated by an intent to exclude Feist Publications from the yellow pages advertising market, anti-competitive intent alone is insufficient to establish a violation of § 2. *Aspen Skiing*, 472 U.S. at 602, 611 n. 44, 105 S.Ct. at 2857, 2862 n. 44. *See also Pacific Eng'g & Prod. Co. of Nev. v. Kerr–McGee Corp.*, 551 F.2d 790, 795 (10th Cir.) ("To prove that a person has that type of exclusionary intent which is condemned in anti-trust cases there must be evidence that the person who foresees a fight to the death intends to use or actually does use unfair weapons. Putting the same idea in another way, we may say that there is no sharp distinction between (a) the existence of an intent to exclude and (b) the use of unfair means."), *cert. denied*, 434 U.S. 879, 98 S.Ct. 234, 54 L.Ed.2d 160 (1977); *Bright v. Moss Ambulance Serv.*, 824 F.2d at 824; *Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of Rhode Island*, 883 F.2d 1101, 1113 (1st Cir.1989) ("[T]he desire to crush a competitor, standing alone, is insufficient to make out a violation of the antitrust laws ... As long as Blue Cross's course of conduct was itself legitimate, the fact that some of its executives hoped to see Ocean State disappear is irrelevant."), *cert. denied*, 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990); *Olympia Equip. Leasing Co. v. Western Union Tel. Co.*, 797 F.2d 370, 379 (7th Cir.1986) ("We add, what has become an antitrust commonplace, that if conduct is not objectively anti-competitive the fact that it was motivated by hostility to competitors ('these turkeys') is irrelevant."),

*cert. denied*, 480 U.S. 934, 107 S.Ct. 1574, 94 L.Ed.2d 765 (1987); *Oahu Gas Serv., Inc. v. Pacific Resources, Inc.*, 838 F.2d 360, 370 (9th Cir.) (a finding of anti-competitive intent will not sustain a § 2 claim in the face of evidence of pro-competitive effects), *cert. denied*, 488 U.S. 870, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988).

Moreover, Feist Publications was unable to identify anyone who had refused to purchase yellow pages advertising in its directory because the Feist Publications northwest directory did not contain complete listings from the Rural Telephone service area. Feist Publications was also unable to identify anyone who had complained that the Feist Publications northwest directory was incomplete. This is a fatal failure of proof.

■ Additionally, Feist Publications offered no proof competition in the yellow pages advertising market was reduced as a result of Rural Telephone's actions. Between 1978 and 1987, Feist Publications' market share rose from zero to twenty percent. Further, during the same years, the price for a quarter column ad remained competitive, with Feist Publications generally charging substantially more than Rural Telephone. Finally, due to different publication dates, Feist Publications' directory often contained listings not available in Rural Telephone's directory. Because Feist Publications has failed to prove harm to competition, its antitrust claim must fail.[8]

REVERSED.

---

7. The district court found Rural Telephone's refusal to deal "did not further competition on the merits." *Rural*, 737 F.Supp. at 622. This is insufficient to constitute actual or threatened harm to competition. Although the court did find Feist Publications' opportunities had been impaired, the antitrust laws were enacted for the protection of *competition*, not individual competitors. *Brunswick*, 429 U.S. at 488, 97 S.Ct. at 697.

8. Although not argued by the parties, we note the provision in Rural Telephone's charter requiring all revenues in excess of the cost of doing business to be returned to the subscribers raises an interesting question. Feist Publication's argument seems to be that Rural Tele-

phone was monopolizing on behalf of its subscribers. As we noted in *Colorado Interstate Gas,* the Sherman Act is not aimed at those who monopolize or attempt to monopolize on behalf of another party. *Colorado Interstate Gas v. Natural Gas Pipeline,* 885 F.2d at 692 n. 15.